UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **BERNARD BERGER,** | ) | |
| **CRAIG JOHNSON,** | ) | |
| **GREGORY CAHILLANE, and** | ) | |
| **ALBERTINE CONNELL,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 08 cv 4023 |
| | ) | |
| v. | ) | Hon. Suzanne Conlon |
| | ) | |
| **THE ART INSTITUTE OF CHICAGO,** | ) | |
| an Illinois Not-for-Profit Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT THE ART INSTITUTE OF CHICAGO'S ANSWER TO PLAINTIFFS' COMPLAINT AND AFFIRMATIVE AND/OR SPECIAL DEFENSES

NOW COMES DEFENDANT The Art Institute of Chicago, by its attorneys, Miller, Canfield, Paddock and Stone, P.L.C. and in answer to the Plaintiffs' Complaint states as follows:

### JURISDICTION AND VENUE

1.    This is a civil action arising under the laws of the United States in which Counts I, II, III, V, and VII are brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1140 ("ERISA Sec. 510") and Counts IV, VI, and VIII are brought pursuant to the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §623(a)(1), to correct unlawful employment practices, and to provide appropriate relief to employees who were adversely affected by such practices.

**ANSWER:** Defendant admits that the complaint purports to state claims for violations of ERISA and the ADEA, but denies that it unlawfully interfered with Plaintiffs' benefits under Defendant's benefit plans or engaged in any discrimination or other wrongful conduct.

2.       This Court has jurisdiction of the claims pursuant to 28 U.S.C. § 1331, 1343; and 29

U.S.C. §§ 1132(e)(1), 1132(f) for Counts I, II, III, V, and VII; and 29 U.S.C. §216(b) as

incorporated in 29 U.S.C. §626 for Counts IV, VI, and VIII.

**ANSWER:** Defendant admits that this Court has subject matter jurisdiction of Plaintiffs' claims

for alleged violations of ERISA and the ADEA.

3.       Venue is proper in this district pursuant to 28 U.S.C. §1391(b) for all counts and 29

U.S.C. §1132(e)(2) for Counts I, II, III, V, and VII.

**ANSWER:**  Defendant admits the allegations in Paragraph 3.

4.       The employment practices hereafter alleged to be unlawful were being committed within

the jurisdiction of the United States District Court for the Northern District of Illinois,

Eastern Division.

**ANSWER:** Defendant admits the allegations in Paragraph 4.

## PARTIES

5.       Plaintiff, Bernard Berger, is now and at all times relevant hereto, a citizen of the state of

Illinois, and resident of this District in the county of Cook.

**ANSWER:** Defendant admits the allegations in Paragraph 5.

6.       Plaintiff, Craig Johnson, is now, and at all time relevant hereto, a citizen of the state of

Illinois, and resident of the Western District of the Northern District of Illinois in the

county of McHenry.

**ANSWER:** Defendant admits the allegations in Paragraph 6.

7.      Plaintiff, Gregory Cahillane, is now a citizen of the state of Michigan and resident of the city of Eastpointe, county of Macomb, and at the time of his termination was a citizen of the state of Illinois, and resident of the city of Chicago, county of Cook.

**ANSWER:** Defendant neither admits nor denies the allegations in Paragraph 7 as it lacks knowledge or information sufficient to form a belief about the truth thereof, except to admit that Plaintiff Cahillane was a resident of the city of Chicago, Cook County, at the time of his termination.

8.      Plaintiff, Albertine Connell [sic], is now and at all times relevant hereto, a citizen of the state of Illinois, and resident of this District in the county of Cook.

**ANSWER:** Defendant admits the allegations in Paragraph 8.

9.      Defendant, The Art Institute of Chicago, (hereinafter referred to as "AIC") is now and was at all times herein mentioned, a non-profit corporation duly organized and existing according to law engaged in an industry affecting commerce in this district.  The AIC's principal place of business is located in Illinois.  The AIC at all relevant times, founds, builds, maintains, and operates museums, schools, libraries of art and theaters, and support facilities in connection therewith, in counties of this District to include the county of Cook.

**ANSWER:** Defendant admits the allegations in Paragraph 9.

10.     For purposes of Counts I, II, III, V, and VII, the AIC is and was at all time relevant hereto an employer under 29 U.S.C. § 1002(5).

**ANSWER:** Defendant denies the allegations in Paragraph 10, except to admit that it is, and was during the tenure of Plaintiffs, an employer as defined in 20 U.S.C. § 1002(5).

11.      For purposes of Counts IV, VI and VIII, the AIC is and was at all times relevant hereto an employer under 29 U.S.C. §630(b).

**ANSWER:** Defendant denies the allegations in Paragraph 11, except to admit that it is, and was during the tenure of Plaintiffs, an employer as defined in 29 U.S.C. § 630(b).

12.     At all times relevant hereto, Plaintiff, Bernard Berger, was employed by Defendant, AIC, as a Fire Protection Specialist within the Department of Protection Services ("DOPS") until his involuntary termination.  Plaintiff was an "employee" within the meaning of ERISA, 29 U.S.C. §1002(6), and a "participant" in and/or "beneficiary" of one or more employee benefit plans covered by ERISA, 29 U.S.C. §1002(7) & (8).

**ANSWER:** Defendant denies the allegations in Paragraph 12, except to admit that Plaintiff Berger was employed by AIC; at the time of his termination, Berger was a "Fire Protection Specialist" within the Department of Protection Services ("DOPS"); and at the time of his termination, Plaintiff Berger was an "employee" within the meaning of ERISA, 29 U.S.C. § 1002(6) and a "participant" in and/or "beneficiary" of one or more employee benefit plans covered by ERISA, 29 U.S.C. § 1002(7) & (8).

13.     At all times relevant hereto, Plaintiffs, Craig Johnson, Gregory Cahillane, and Albertine Connell [sic], were employed by Defendant, AIC, as Security Managers within the DOPS, until their involuntary terminations. These Plaintiffs were "employee[s]" within the meaning of ERISA, 29 U.S.C. §1002(6), and "participant[s]" in and/or "beneficiar[ies]" of one or more employee benefit plans covered by ERISA, 29 U.S.C. §1002(7) & (8). These Plaintiffs also were "employee[s]" within the meaning of the ADEA, 29 U.S.C. §630(f).

**ANSWER:** Defendant denies the allegations in Paragraph 13, except to admit that it employed Plaintiffs Johnson, Cahillane and Connell as Security Managers within its DOPS at that the time it terminated their respective employment; that at the time of his/her respective termination, Plaintiffs Johnson, Cahillane and Connell were each an "employee" within the meaning of ERISA, 29 U.S.C. § 1002(6) and a "participant" in and/or a "beneficiary" of an employee benefit plan covered by ERISA, 29 U.S.C. § 1002(7) & (8), and that at the time of his/her respective termination, Plaintiffs Johnson, Cahillane and Connell were each an "employee" within the meaning of the ADEA, 29 U.S.C. § 630(f).

### FACTS COMMON TO ALL PLAINTIFFS

14.     Plaintiffs began their employment with Defendant, AIC, as part of the Protection Services division between 1977 and 1987.

**ANSWER:** Defendant admits the allegations in Paragraph 14.

15.     Plaintiffs excelled each year, perfected their crafts, earned promotions and excellent performance reviews until 2002.

**ANSWER:** Defendant denies the allegations in Paragraph 15.

16.    In 2002, a new management team and style was initiated at the AIC, which greatly affected employee benefits and the management of the DOPS.

**ANSWER:** Defendant denies the allegations in Paragraph 16, except to admit that Ray VanHook became the new Executive Director of DOPS in 2002 and that VanHook attempted to increase accountability and professionalism among DOPS employees.

17.    In 2004, multiple changes were made by the new AIC Administration regarding employees' benefits.  These changes include instituting a policy that no severance benefit would be paid if the employee was terminated with "cause" and increasing the retirement age for pension purposes from sixty-two (62) to sixty-five (65) years of age.

**ANSWER:** Defendant denies the allegation in Paragraph 17, except to admit that in 2004, there were changes made in health and pension plans and the retirement age for pension purposes was increased from sixty-two (62) to sixty-five (65) for those employees to whom the age sixty-five (65) requirement was not already applicable.

18.    From 2002 through 2004, plaintiffs received performance reviews of "meeting expectations" or above "meeting expectations".

**ANSWER:** Defendant denies the allegations in Paragraph 18.

19.    In 2004 and 2005, plaintiffs [sic] positions were altered by either promotions or change of departments.

**ANSWER:** Defendant denies the allegations in Paragraph 19, except to admit that the positions of Plaintiffs Johnson, Cahillane and Conell were altered to increase their responsibilities and, as a result, they became FLSA exempt employees and received an increase in pay.

20.     Due to plaintiffs' years served at AIC, all in excess of nineteen years at time of termination, they stood to receive substantial pension benefits in the following ten years upon their retirement at the age of sixty-five or older.

**ANSWER:** Defendant neither admits nor denies the allegations in Paragraph 20 as it lacks knowledge or information sufficient to form a belief about the truth thereof, except to admit that each Plaintiff had worked at least nineteen years for AIC at the time of their respective termination and that each was vested in pension benefits that could be obtained pursuant to the pension plan.

21.     Starting in November 2005, within a span of ten months, Defendant, AIC, terminated the employment of all plaintiffs.

**ANSWER:** Defendant admits the allegations in Paragraph 21, but denies any implication or inference that the terminations were related to each other.

### COUNT I
### VIOLATION OF SECTION 510 OF ERISA
### EMPLOYEE PENSION PLAN

1-21    Plaintiff, Bernard Berger, reaffirms and realleges the allegations contained in Paragraph 1 through 21 above, and states further in this Count I.

**ANSWER:** Defendant incorporates and restates its responses to Paragraphs 1-21 as if fully set forth herein.

22.    Plaintiff, Bernard Berger, began his employment with Defendant, AIC, on November 1,

1977.

**ANSWER:** Defendant admits the allegations in Paragraph 22.


23.    At all relevant times, Plaintiff, Bernard Berger, was qualified for his position as Fire

Protection Specialist.

**ANSWER:** Defendant denies the allegations in Paragraph 23.


24.    From 1977 to 2002, Plaintiff excelled each year, perfected his craft, and earned excellent

performance reviews.

**ANSWER:** Defendant denies the allegations in Paragraph 24.


25.    Although Plaintiff's performance was satisfactory, on November 8, 2004, Plaintiff,

Berger, was placed on a ninety (90) day Performance Improvement Plan (PIP), which

was extended thirty (30) days on February 9, 2005.  However, in April 2005, Plaintiff,

Berger, was orally informed by his supervisor, Margaret Skimina, that his job was no

longer in jeopardy.

**ANSWER:**  Defendant denies the allegations in Paragraph 25, except to admit that on November

8, 2004, Plaintiff Berger was placed on a ninety (90) day performance improvement plan, which

was extended thirty (30) days on February 9, 2005.

26.     On August 3, 2005, Plaintiff, Berger, received a new job description and was transferred from the Physical Plant Department to the OSHA compliance office.

**ANSWER:** Defendant denies the allegations in Paragraph 26.

27.     Then on September 26, 2005, Plaintiff, Berger, received a memorandum from his supervisor, Skimina, referencing the November 2004 PIP and stating that Plaintiff had not fulfilled the 2004 PIP.  Plaintiff avers that this memorandum was in direct conflict with the oral confirmation that his job was no longer in jeopardy and was irrelevant due to Plaintiff's  new job description and placement.

**ANSWER:** Defendant denies the allegations in Paragraph 27, except to admit that Skimina provided Plaintiff Berger with a memo dated September 26, 2005.

28.     On November 4, 2005, Plaintiff, Berger, met with his supervisor, Skimina, at which time he was terminated.   At the meeting he received a memorandum addressed to Jevoid Simmons, AIC  Manager of Employee Relations, from Skimina dated October 31, 2005 in which Skimina recommended terminating Berger's employment and referenced the expired 2004 PIP.

**ANSWER:** Defendant admits the allegations in Paragraph 28.

29.     AIC alleges that Berger was terminated for cause on November 4, 2005 based on substandard performance, however, Plaintiff had not been formally evaluated or received an annual evaluation since September 2004, over a year prior to his termination.

**ANSWER:** Defendant denies the allegations in Paragraph 29, except to admit that it terminated Berger's employment on November 4, 2005.

30.     Plaintiff, Berger, avers that his involuntary termination allegedly "for cause" was pre-textual and intentionally designed to prevent him from exercising his rights to further benefits under the AIC Pension Plan.

**ANSWER:** Defendant denies the allegations in Paragraph 30.

31.     At all times material hereto, AIC maintained the Art Institute of Chicago Pension Plan ("AIC Pension Plan").

**ANSWER:** Defendant admits that it maintained a pension plan, the correct name which is The Art Institute of Chicago Pension Plan ("AIC Pension Plan").

32.     Upon information and belief, the AIC Pension Plan is an ERISA qualified employee pension benefit plan as defined by 29 U.S.C. §1002(2)(A).

**ANSWER:** Defendant admits the allegations in Paragraph 32.

33.     The AIC Pension Plan provides participants with a monthly pension benefit upon retirement that continues over the remainder of the participant's lifetime and over the participant's surviving spouse's lifetime.  (Attached as "Exhibit A", AIC Pension Plan Summary).

**ANSWER:** Defendant denies the allegations in Paragraph 33, except to admit that one option an eligible plan participant may elect is a contingent annuity.

34.     Plaintiff, Berger, is a plan participant within the meaning of the AIC Pension Plan.

**ANSWER:** Defendant admits the allegations in Paragraph 34.

35.     At all times material hereto Berger satisfied all conditions precedent to vesting and awarding of post-termination benefits under the AIC Pension Plan.

**ANSWER:** Defendant denies the allegations in Paragraph 35, except to admit that Plaintiff Berger was vested and eligible to receive benefits under the AIC Pension Plan.

36.     Pursuant to the AIC Pension Plan, on November 1, 1982, with five years of service, Berger became vested in his pension benefits.

**ANSWER:** Defendant admits the allegations in Paragraph 36.

37.     On November 4, 2005, Defendant, AIC, discharged Plaintiff, Berger, for the purpose of interfering with his attainment of "normal retirement pension" benefits, as described in the AIC Pension Plan Summary.  (Exhibit A, 7).

**ANSWER:** Defendant denies the allegations in Paragraph 37.

38.     Plaintiff, Berger, was employed by AIC in excess of twenty years and maintained satisfactory or better performance records prior to his termination.

**ANSWER:** Defendant denies the allegations in Paragraph 38, except to admit that it employed Plaintiff Berger in excess of twenty years.

39.     Due to Defendant, AIC, terminating Plaintiff's employment, Berger was forced to elect the early retirement pension, and suffered a major deduction in his monthly pension benefits as Plaintiff was not anticipating retiring until May 1, 2012, at the age of sixty-five (65).

**ANSWER:** Defendant denies the allegations in Paragraph 39, except to admit that participants in the AIC Pension Plan who meet certain criteria have an option to elect an early retirement pension and that upon such an election, an actuarial reduction in monthly benefits is made.

40.     Plaintiff, Berger, avers that his involuntary termination allegedly "for cause" was pretextual and intentionally designed to prevent him from exercising his rights to further benefits under the AIC Pension Plan.

**ANSWER:** Defendant denies the allegations in Paragraph 40.

41.     On or about July 6, 2006, Plaintiff, Berger, was granted his reduced, early retirement pension benefit.

**ANSWER:** Defendant denies the allegations in Paragraph 41, except to admit that on July 1, 2006, Plaintiff Berger began receiving pension benefits.

42.     As a direct and proximate result of Defendant's violation of ERISA section 510, Plaintiff has lost and will continue to lose income, including but not limited to, wages, salary increases, medical and dental insurance, pension benefits and other employment benefits. Plaintiff has also suffered disruption of his personal life and damage to his employment reputation.

**ANSWER:** Defendant denies the allegations in Paragraph 42.

**COUNT II**
**VIOLATION OF SECTION 510 OF ERISA**
**EMPLOYEE WELFARE BENEFIT PLAN**

1-42.   Plaintiff, Bernard Berger, reaffirms and realleges the allegations contained in Paragraph 1

through 42 of Count I as in this Count II.

**ANSWER:** Defendant incorporates and restates its responses to Paragraphs 1-42 as if fully set

forth herein.


43.     At all times material hereto, AIC maintained the Art Institute of Chicago Medical and

Dental Plan ("AIC Medical and Dental Plan").

**ANSWER:** Defendant denies the allegations in Paragraph 43, except to admit that it maintained

The Art Institute of Chicago Welfare Benefit Plan, which included programs of medical and

dental insurance.


44.     Upon information and belief, the AIC Medical and Dental Plan is an ERISA qualified

employee welfare benefit plan as defined by 29 U.S.C. §1002(1).

**ANSWER:** Defendant denies the allegations in Paragraph 44, except to admit that it maintained

The Art Institute of Chicago Welfare Benefit Plan, which is a welfare benefit plan as defined by

29 U.S.C. § 1002(1).

45.     The AIC Medical and Dental Plan provides participants with medical and dental insurance coverage in addition to other employee benefits.  (Employee Guidelines that referred to AIC Medical and Dental Plan attached as "Exhibit B").

**ANSWER:** Defendant denies the allegations in Paragraph 45, except to admit that it maintained The Art Institute of Chicago Welfare Benefit Plan, which provided participants with medical and dental insurance.

46.     At all times material hereto, Plaintiff, Berger, was a plan participant within the meaning of the AIC Medical and Dental Plan.

**ANSWER:** Defendant denies the allegations in Paragraph 46, except to admit that Plaintiff Berger was a participant in The Art Institute of Chicago Welfare Benefit Plan.

47.     At all times material hereto, Plaintiff, Bernard Berger, his wife, Susan Berger, and his son, Matthew Berger, received medical and dental benefits under the AIC Medical and Dental Plan which included Cigna medical insurance.

**ANSWER:** Defendant denies the allegations in Paragraph 47, except to admit that at times during his employment and following his retirement, Plaintiff Berger elected to obtain coverage for his wife and son under The Art Institute of Chicago Welfare Benefit Plan.

48.     In 2004, Cigna, pursuant to the AIC Medical and Dental Plan, covered over $100,000 of medical expenses for treatment of Plaintiff's wife, Susan Berger

**ANSWER:** Defendant neither admits nor denies the allegations in Paragraph 48 as it lacks knowledge or information sufficient to form a belief about the truth thereof.

49.     From September 2002 through September 2003, Cigna, pursuant to the AIC Health and
        Dental plan, covered over $53,000 of medical expenses for treatment of Plaintiff's son,
        Matthew Berger.

**ANSWER:** Defendant neither admits nor denies the allegations in Paragraph 49 as it lacks
knowledge or information sufficient to form a belief about the truth thereof.

50.     Plaintiff, Berger, avers that his involuntary termination allegedly "for cause" was pre-
        textual and intentionally designed to prevent him for exercising his rights to further
        benefits under the AIC Medical and Dental Plan.

**ANSWER:** Defendant denies the allegations in Paragraph 50.

51.     Due to Defendant terminating Plaintiff's employment, Plaintiff was forced into an
        expensive COBRA insurance policy for himself and he had to obtain lesser third party
        insurance coverage at a higher cost for his wife and son.

**ANSWER:** Defendant denies the allegations in Paragraph 51.

52.     As a direct and proximate result of Defendant's violation of ERISA, Plaintiff has lost and
        will continue to lose income, including, but not limited to wages, salary increase, medical
        and dental insurance for himself and his dependents, pension benefits and other
        employment benefits.  Plaintiff has also suffered disruption of his personal life and
        damage to his employment reputation.

**ANSWER:** Defendant denies the allegations in Paragraph 52.

## COUNT III
## CRAIG JOHNSON
## VIOLATION OF SECTION 510 OF ERISA

1-21.    Plaintiff, Craig Johnson, reaffirms and realleges the allegations contained in paragraphs 1

through 21 above as paragraphs 1 through 21 in this Count III.

**ANSWER:** Defendant incorporates and restates its responses to the prior Paragraphs above as if

fully set forth herein.


22.    Plaintiff, Craig Johnson, began his employment with defendant, AIC, on February 17,

1987, as a Security Supervisor in the DOPS.

**ANSWER:** Defendant denies the allegations in Paragraph 22, except to admit that it hired

Plaintiff Johnson on February 17, 1987.


23.    Plaintiff maintained excellent, exceeding expectations performance reviews from 1987

through 2002.

**ANSWER:** Defendant denies the allegations in Paragraph 23.


24.    In 2004, the new management team restructured the DOPS, and Plaintiff, Craig Johnson,

was "promoted" from a hourly position to a salaried, Fair Labor Standards Act exempt,

position, with a modest increase to his salary and a significant increase of expectations

placed upon Plaintiff.

**ANSWER:** Defendant denies the allegations in Paragraph 24, except to admit that Plaintiff Johnson's position was altered to increase his responsibilities and, as a result, he became an FLSA exempt employee and received an increase in pay.

25.     Upon information and belief, between 2005 and 2006, Plaintiff's Supervisors were told by the AIC Associate Director of Museum Operations to terminate the employment of Plaintiff in addition to two of Plaintiff's co-workers, Cahillane and Connell [sic].

**ANSWER:** Defendant denies the allegations in Paragraph 25.

26.     At all relevant times, plaintiff, Craig Johnson, was qualified for his position as Security Manager.

**ANSWER:** Defendant denies the allegations in Paragraph 26.

27.     AIC alleges that Craig Johnson was terminated for cause on September 15, 2006 based on a decision made by Johnson to not report an incident that occurred September 11, 2006 in which two AIC workers, one an AIC employee and the other a contractor, had a disagreement and the AIC employee "threatened" the contractor. The threatened contractor reported the disagreement but not the threat to Johnson.  Additionally, the contractor reported the threat to his direct supervisor who contacted human resources. The contractor was not a member of the staff plaintiff managed and plaintiff's job description does not list reporting of employee disputes as a job duty.  (Job description attached as "Exhibit C").

**ANSWER:** Defendant denies the allegations in Paragraph 27, except to admit that Plaintiff Johnson failed to report or take appropriate action in response to an incident involving two employees and that his failure to so report the incident as well as his failure to take appropriate action in response to the incident contributed to the decision to terminate this employment.

28.     Furthermore, the following day, September 12, 2006, plaintiff's relatively new supervisor, Monique Tarleton, questioned Plaintiff regarding the incident in which Plaintiff stated that the direct supervisor of contractors was the proper person to handle the incident, as had been the procedure during this twenty years at the AIC.  This did not satisfy Ms. Tarleton and she reported the matter to the Associate Director of Museum Operations, the same individual who upon information and belief, told plaintiff's supervisors to terminate plaintiff's employment.

**ANSWER:** Defendant denies the allegations in Paragraph 28, except to admit that Tarleton investigated the incident, was not satisfied with the excuses offered by Plaintiff Johnson and that she reported to the Associate Director the incident and her belief that Johnson's performance in the circumstances was inappropriate.

29.     Plaintiff, Craig Johnson, avers that his involuntary termination on September 15, 2006, allegedly "for cause" was pre-textual and intentionally designed to prevent him from exercising his rights to further benefits under the AIC Pension Plan.

**ANSWER:** Defendant denies the allegations in Paragraph 29.

30.    At all times material hereto, AIC maintained the Art Institute of Chicago Pension Plan ("AIC Pension Plan").

**ANSWER:** Defendant admits that it maintained a pension plan, the correct name which is The Art Institute of Chicago Pension Plan ("AIC Pension Plan").

31.    Upon information and belief, the AIC Pension Plan is an ERISA qualified employee pension benefit plan as defined by 29 U.S.C. §1002(2)(A).

**ANSWER:** Defendant admits the allegations in Paragraph 31.

32.    The AIC Pension Plan provides participants with a monthly pension benefit upon retirement that continues over the remainder of the participant's lifetime and over the participant's surviving spouse's lifetime.  (Exhibit A).

**ANSWER:** Defendant denies the allegations in Paragraph 32, except to admit that one option an eligible plan participant may elect is a contingent annuity.

33.    Plaintiff, Craig Johnson, is a plan participant within the meaning of the AIC Pension Plan.

**ANSWER:**  Defendant admits the allegations in Paragraph 33.

34.    At all times material hereto Craig Johnson satisfied all conditions precedent to vesting and awarding of post-termination benefits under the AIC Pension Plan.

**ANSWER:** Defendant denies the allegations in Paragraph 34, except to admit that Plaintiff Johnson was vested and eligible to receive benefits under the AIC Pension Plan.

35.    Pursuant to the AIC Pension Plan, on February 17, 1992, with fives years of service, Craig Johnson became vested in his pension benefits.

**ANSWER:** Defendant admits the allegations in Paragraph 35.


36.    Upon information and belief, of the twenty-seven Protection Service Managers in the DOPS, only ten, including Plaintiffs, were scheduled to receive similar pensions within the next ten years.  In addition to Plaintiffs, two members of this group have been involuntarily terminated with the past three years and another is on work protected leave.

**ANSWER:** Defendant denies the allegations in Paragraph 36.


37.    On September 15, 2006, Defendant, AIC, discharged Plaintiff, Craig Johnson, for the purpose of interfering with his attainment of "normal retirement pension" benefits, as described in the AIC Pension Plan Summary.  (Exhibit A, 7).

**ANSWER:** Defendant denies the allegations in Paragraph 37.


38.    Plaintiff, Craig Johnson, was employed by AIC in excess of nineteen years and maintained satisfactory or better performance records prior to this termination.

**ANSWER:** Defendant denies the allegations in Paragraph 38, except to admit that it employed Plaintiff Johnson for over nineteen years.

39.     Due to defendant, AIC, terminating plaintiff's employment, Craig Johnson suffered a major deduction in his monthly pension benefits as plaintiff was not anticipating retiring until February 2014, at the age of sixty-six (66).

**ANSWER:** Defendant denies the allegations in Paragraph 39, except to admit that participants in the AIC Pension Plan who meet certain criteria have an option to elect an early retirement pension and that upon such an election, an actuarial reduction in monthly benefits is made.

40.     Plaintiff, Craig Johnson, avers that his involuntary termination allegedly "for cause" was pre-textual and intentionally designed to prevent him from exercising his rights to further benefits under the AIC Pension Plan.

**ANSWER:** Defendant denies the allegations in Paragraph 40.

41.     Plaintiff has not selected to receive his reduced pension payments at this time.

**ANSWER:** Defendant denies the allegations in Paragraph 41, except to admit that Plaintiff Johnson has not applied to receive retirement benefits at this time.

42.     As a direct and proximate result of defendant's violation of ERISA section 510, plaintiff has lost and will continue to lose income, including but not limited to, wages, salary increases, medical and dental insurance, pension benefits and other employment benefits. Plaintiff has also suffered disruption of his personal life and damage to his employment reputation.

**ANSWER:** Defendant denies the allegations in Paragraph 42.

## COUNT IV
## CRAIG JOHNSON
## VIOLATION OF ADEA

1-42.    Plaintiff, Craig Johnson, reaffirms and realleges the allegations contained in paragraph 1

through 42 of Count III as paragraphs 1 through 40 [sic] of this Count IV.

**ANSWER:** Defendant incorporates and restates its responses to the prior Paragraphs of Count

III as if fully set forth herein.


43.    On or about October 10, 2006, Plaintiff, Craig Johnson, filed a charge of discrimination

against Defendant, AIC, with the Equal Employment Opportunity Commission

("EEOC"), Charge No. 440-2007-0016 ("Exhibit D").

**ANSWER:** Defendant admits the allegations in Paragraph 43.


44.    Plaintiff's charge of discrimination was timely filed within three hundred (300) days of

the alleged unlawful employment practice; thus, Plaintiff has satisfied all administrative

prerequisites.

**ANSWER:** Defendant denies the allegations in Paragraph 44, except to admit that Plaintiff

Johnson filed a charged of discrimination within three hundred (300) days of his discharge.


45.    Plaintiff, Craig Johnson, received the right to sue letter from the EEOC dated April 17,

2007 [*sic*].  Said right to sue letter is attached hereto as "Exhibit E".  This case is filed

within ninety (90) days thereof.

**ANSWER:** Defendant admits the allegations in Paragraph 45.

46.      On September 15, 2006 Defendant. AIC, terminated Plaintiff's employment based on his age.

**ANSWER:** Defendant denies the allegations in Paragraph 46.

47.      Plaintiff, Craig Johnson, was born on January 6, 1948 and at all relevant times, he was in excess of 40 years of age.

**ANSWER:** Defendant denies the allegations in Paragraph 47, except to admit that Plaintiff Johnson's date of birth is January 6, 1948.

48.      Defendants' [sic] conduct in terminating plaintiff and replacing him with, upon information and belief, a less qualified, younger Securitas contractor who earned less wages and may not receive employee pension and welfare benefits, was discriminatory and in violation of plaintiff's rights under the Age in Discrimination in Employment Act.

**ANSWER:** Defendant denies the allegations in Paragraph 48.

49.      Upon information and belief, the unlawful discriminatory practices by Defendants [sic], as set forth above, were intentional.

**ANSWER:** Defendant denies the allegations in Paragraph 49.

50.      Defendants [sic], at all relevant times, acted with malice or reckless indifference to the federally protected rights of Plaintiff in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C.A. § 621.

**ANSWER:** Defendant denies the allegations in Paragraph 50.

51.     That the aforesaid acts by the Defendant have intentionally discriminated against Plaintiff.

**ANSWER:** Defendant denies the allegations in Paragraph 51.


52.     As a direct and proximate result of Defendants' [sic] violation of the ADEA, Plaintiff has lost and will continue to lose income, including but not limited to wages, raises, insurance and other employment benefits.  Plaintiff has also suffered severe emotional distress and humiliation about the ability to support himself, as well as disruption of his personal life and damage to his employment reputation.

**ANSWER:** Defendant denies the allegations in Paragraph 52.

**COUNT V**
**GREGORY CAHILLANE**
**VIOLATION OF SECTION 510 OF ERISA**

1-21    Plaintiff, Gregory Cahillane, reaffirms and realleges the allegations contained in paragraphs 1 through 21 above as paragraphs 1 through 20 [sic] of this Count V.

**ANSWER:** Defendant incorporates and restates its responses to the prior Paragraphs above as if fully set forth herein.


22.     Plaintiff, Gregory Cahillane, began his employment with defendant, AIC, on February 17, 1987, as a Security Guard in the DOPS.

**ANSWER:** Defendant denies the allegations in Paragraph 22, except to admit that Plaintiff Cahillane began his employment with AIC as a Security Guard in the DOPS.

23.    Plaintiff was promoted to Security Supervisor in 1991.

**ANSWER:** Defendant denies the allegations in Paragraph 23.


24.    Plaintiff maintained excellent, exceeding expectations performance reviews from 1987

through 2002.

**ANSWER:** Defendant denies the allegations in Paragraph 24.


25.    In 2004, the new management team restructured the DOPS, and Plaintiff was "promoted

from a hourly position to a salaried, Fair Labor Standards Act exempt, position, with a

modest increase to his salary and a significant increase of expectations placed upon

Plaintiff.

**ANSWER:** Defendant denies the allegations in Paragraph 25.


26.    Upon information and belief, between 2005 and 2006, Plaintiff's Supervisors were told

by the AIC Associate Director of Museum Operations to terminate the employment of

Plaintiff in addition to two of Plaintiff's co-workers, Johnson and Connell [sic].

**ANSWER:** Defendant denies the allegations in Paragraph 26.


27.    At all relevant times, Plaintiff, Gregory Cahillane, was qualified for his position as

Security Manager.

**ANSWER:** Defendant denies the allegations in Paragraph 27.

28.     AIC alleges that Gregory Cahillane was terminated for cause on September 15, 2006 based on a decision made by Cahillane to remove a security guard taking an attendance count of a Senior Celebration Event to help his supervisor, Monique Tarleton at her request.  At the time Plaintiff removed the guard from her count assignment he believed the guard had fulfilled her duty and to ensure the area was covered, replaced the removed guard with another guard.  However, the count of attendees that was provided to the event coordinator was 35 guests lower than the number of tickets sold, so it was deemed inaccurate.  Additionally, providing event attendance counts is not a duty listed under Plaintiff's job description. (Exhibit C).

**ANSWER:** Defendant denies the allegations in Paragraph 28, except to admit that Plaintiff Cahillane was responsible for the staffing and supervision of guards at the event mentioned, including attendance counting, that no accurate count of attendance was made due to Plaintiff Cahillane's poor supervision and that this instance of poor supervision is an example of the types of poor performance that lead to his termination.

29.     Plaintiff, Gregory Cahillane, avers that his involuntary termination on September 15, 2006, allegedly "for cause" was pre-textual and intentionally designed to prevent him from exercising his rights to further benefits under the AIC Pension Plan.

**ANSWER:** Defendant denies the allegations in Paragraph 29.

30.     At all times material hereto, AIC maintained the Art Institute of Chicago Pension Plan ("AIC Pension Plan").

**ANSWER:** Defendant admits that it maintained a pension plan, the correct name which is The Art Institute of Chicago Pension Plan ("AIC Pension Plan").

31.     Upon information and belief, the AIC Pension Plan is an ERISA qualified employee pension benefit plan as defined by 29 U.S.C. §1002(2)(A).

**ANSWER:** Defendant admits the allegations in Paragraph 31.

32.     The AIC Pension Plan provides participants with a monthly pension benefit upon retirement that continues over the remainder of the participant's lifetime and over the participant's surviving spouse's lifetime.  (Exhibit A).

**ANSWER:** Defendant denies the allegations in Paragraph 32, except to admit that one option an eligible plan participant may elect is a contingent annuity.

33.     Plaintiff, Gregory Cahillane, is a plan participant within the meaning of the AIC Pension Plan.

**ANSWER:** Defendant admits the allegations in Paragraph 33.

34.     At all times material hereto Gregory Cahillane satisfied all conditions precedent to vesting and awarding of post-termination benefits under the AIC Pension Plan.

**ANSWER:** Defendant denies the allegations in Paragraph 34, except to admit that Plaintiff Cahillane was vested and eligible to receive benefits under the AIC Pension Plan.

35.    Pursuant to the AIC Pension Plan, on June 1, 1992, with five years of service, Gregory Cahillane became vested in his pension benefits.

**ANSWER:** Defendant admits the allegations in Paragraph 35.

36.    Upon information and belief, of the twenty-seven Protection Service Managers in the DOPS, only ten, including Plaintiffs, were scheduled to receive similar pensions within the next ten years.  In addition to Plaintiffs, two members of this group have been involuntarily terminated within the past three years and another is on work protected leave.

**ANSWER:** Defendant denies the allegations in Paragraph 36.

37.    On September 15, 2006, Defendant, AIC, discharged Plaintiff, Gregory Cahillane, for the purpose of interfering with his attainment of "normal retirement pension" benefits, as described in the AIC Pension Plan Summary.  (Exhibit A, 7).

**ANSWER:** Defendant denies the allegations in Paragraph 37

38.    Plaintiff, Gregory Cahillane, was employed by AIC in excess of nineteen years and maintained satisfactory or better performance records prior to his termination.

**ANSWER:** Defendant denies the allegations in Paragraph 38, except to admit that it employed Plaintiff Cahillane for over nineteen years.

39.     Due to defendant, AIC, terminating plaintiff's employment, Craig Johnson [sic] suffered a major deduction in his monthly pension benefits as plaintiff was not anticipating retiring until December 2019, at the age of sixty-six (66).

**ANSWER:** Defendant denies the allegations in Paragraph 39, except to admit that participants in the AIC Pension Plan who meet certain criteria have an option to elect an early retirement pension and that upon such an election, an actuarial reduction in monthly benefits is made.

40.     Plaintiff, Gregory Cahillane, avers that his involuntary termination allegedly "for cause" was pre-textual and intentionally designed to prevent him from exercising his rights to further benefits under the AIC Pension Plan.

**ANSWER:** Defendant denies the allegations in Paragraph 40.

41.     Plaintiff has not selected to receive his reduced pension payments at this time.

**ANSWER:** Defendant denies the allegations in Paragraph 41, except to admit that Plaintiff Cahillane has not elected pension benefits.

42.     As a direct and proximate result of defendant's violation of ERISA section 510, plaintiff has lost and will continue to lose income, including but not limited to, wages, salary increases, medical and dental insurance, pension benefits and other employment benefits. Plaintiff has also suffered disruption of his personal life and damage to his employment reputation.

**ANSWER:** Defendant denies the allegations in Paragraph 42.

## COUNT VI
## GREGORY CAHILLANE
## VIOLATION OF ADEA

1-42.   Plaintiff Gregory Cahillane, reaffirms and realleges the allegations contained in paragraphs 1 through 42 of Count V as paragraphs 1 through 42 of Count VI.

**ANSWER:** Defendant incorporates and restates its responses to the prior Paragraphs of Count V as if fully set forth herein.


43.   On or about January 9, 2007, Plaintiff, Gregory Cahillane, filed a charge of discrimination against Defendant, AIC, with the EEOC, Charge No. 440-2007-01942. (Exhibit F).

**ANSWER:** Defendant admits the allegations in Paragraph 43.


44.   Plaintiff's charge of discrimination was timely filed within three hundred days of the alleged unlawful employment practice occurred thus, Plaintiff has satisfied all administrative prerequisites.

**ANSWER:** Defendant denies the allegations in Paragraph 44, except to admit that Plaintiff Cahillane filed a charged of discrimination within three hundred (300) days of his discharge.


45.   Plaintiff, Gregory Cahillane, received the right to sue letter from the EEOC dated April 17, 2007 [sic].  Said right to sue letter is attached hereto as Exhibit G.  This case is filed within ninety days thereof.

**ANSWER:**  Defendant admits the allegations in Paragraph 45.

46.    That on September 15, 2006, the defendant terminated the plaintiff's employment based on his age.

**ANSWER:** Defendant denies the allegations in Paragraph 46.

47.    Plaintiff, Gregory Cahillane, was born on November 11, 1953 and at all relevant times, he was in excess of 40 years of age.

**ANSWER:** Defendant denies the allegations in Paragraph 47, except to admit that Plaintiff Cahillane's date of birth is November 11, 1953.

48.    Defendants' [sic] conduct in terminating plaintiff and replacing him with, upon information and belief, a less qualified, younger Securitas contractor who earned less wages and did not receive employee pension and welfare benefits, was discriminatory and in violation of plaintiff's rights under the Age in Discrimination in Employment Act.

**ANSWER:** Defendant denies the allegations in Paragraph 48.

49.    Upon information and belief, the unlawful discriminatory practices by Defendants [sic], as set forth above, were intentional.

**ANSWER:** Defendant denies the allegations in Paragraph 49.

50.    Defendants [sic], at all relevant times, acted with malice or reckless indifference to the federally protected rights of Plaintiff in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C.A. § 621.

**ANSWER:** Defendant denies the allegations in Paragraph 50.

51.    That the aforesaid acts by the Defendant have intentionally discriminated against Plaintiff.

**ANSWER:** Defendant denies the allegations in Paragraph 51.

52.    As a direct and proximate result of Defendants' [sic] violation of the ADEA, Plaintiff has lost and will continue to lose income, including but not limited to wages, raises, insurance and other employment benefits.  Plaintiff has also suffered severe emotional distress and humiliation about the ability to support himself, as well as disruption of his personal life and damage to his employment reputation.

**ANSWER:** Defendant denies the allegations in Paragraph 52.

## COUNT VII
## ALBERTINE CONNELL [sic]
## VIOLATION OF SECTION 510 OF ERISA

1-21.    Plaintiff, Albertine Connell [sic], reaffirms and realleges the allegations contained in paragraphs 1 through 21 above as paragraphs 1 through 21 of this Count VII.

**ANSWER:** Defendant incorporates and restates its responses to the prior Paragraphs above as if fully set forth herein.

22.    Plaintiff, Albertine Connell [sic], began her employment with defendant, AIC, on October 8, 1984, as a Security Guard in the DOPS.

**ANSWER:** Defendant admits the allegations in Paragraph 22.

23.    Plaintiff, Albertine Connell [sic], was promoted to Security Supervisor in 1990.

**ANSWER:** Defendant admits the allegations in Paragraph 23.


24.    Plaintiff maintained excellent, exceeding expectations performance reviews from 1987 through 2002.

**ANSWER:** Defendant denies the allegations in Paragraph 24.


25.    In 2004, the new management team restructured the DOPS, and Plaintiff, Albertine Connell [sic], was "promoted" from a hourly position to a salaried, Fair Labor Standards Act exempt, position, with a modest increase to her salary and a significant increase of expectations placed upon Plaintiff.

**ANSWER:** Defendant denies the allegations in Paragraph 25, except to admit that Plaintiff Connell's position was altered to increase her responsibilities and, as a result, she became an FLSA exempt employee and received an increase in pay.


26.    Upon information and belief, between 2005 and 2006, Plaintiff's Supervisors were told by the AIC Associate Director of Museum Operations to terminate the employment of Plaintiff in addition to two of Plaintiff's co-workers, Johnson and Cahillane.

**ANSWER:** Defendant denies the allegations in Paragraph 26.


27.    At all relevant times, plaintiff, Albertine Connell [sic], was qualified for her position as Security Manager.

**ANSWER:** Defendant denies the allegations in Paragraph 27.

28.    On March 20, 2006, plaintiff, Albertine Connell [sic], received notice of her termination from Ray Van Hook without explanation.

**ANSWER:** Defendant denies the allegations in Paragraph 28, except to admit that Plaintiff Connell was provided with a memo on March 20, 2006, notifying her of her termination from AIC.

29.    Defendant, AIC, alleges plaintiff, Albertine Connell [sic], was terminated for cause based upon an incident on March 10, 2006 in which Connell [sic] arrived early for work and did not respond to a call for assistance.  Connell [sic] did not respond because another Security Manager was already on duty and he should have responded to the call. Additionally, her shift had not yet begun.

**ANSWER:** Defendant denies the allegations in Paragraph 29, except to admit that on March 10, 2006, Plaintiff Connell failed to respond a call for assistance from an AIC employee while she was at work and that Plaintiff Connell's explanation for her failure to respond was that her shift did not start for a few minutes; and that the unprofessional attitude demonstrated by this behavior contributed to her discharge.

30.    At all times material hereto, AIC maintained the Art Institute of Chicago Pension Plan ("AIC Pension Plan").

**ANSWER:** Defendant admits that it maintained a pension plan, the correct name which is The Art Institute of Chicago Pension Plan ("AIC Pension Plan").

31.     Upon information and belief, the AIC Pension Plan is an ERISA qualified employee pension benefit plan as defined by 29 U.S.C. §1002(2)(A).

**ANSWER:** Defendant admits the allegations in Paragraph 31.

32.     The AIC Pension Plan provides participants with a monthly pension benefit upon retirement that continues over the remainder of the participant's lifetime and over the participant's surviving spouse's lifetime.  (Exhibit A).

**ANSWER:** Defendant denies the allegations in Paragraph 32, except to admit that one option an eligible plan participant may elect is a contingent annuity.

33.     Plaintiff, Albertine Connell [sic], is a plan participant within the meaning of the AIC Pension Plan.

**ANSWER:** Defendant admits the allegations in Paragraph 33.

34.     At all times material hereto Albertine Connell [sic] satisfied all conditions precedent to vesting and awarding of post-termination benefits under the AIC Pension Plan.

**ANSWER:** Defendant denies the allegations in Paragraph 34, except to admit that Plaintiff Berger was vested and eligible to receive benefits under the AIC Pension Plan.

35.     Pursuant to the AIC Pension Plan, on October 8, 1989, with five years of service, Albertine Connell [sic] became vested in her pension benefits.

**ANSWER:** Defendant admits the allegations in Paragraph 35.

36.     Upon information and belief, of the twenty-seven Protection Service Managers in the DOPS, only ten, including Plaintiffs, were scheduled to receive similar pensions within the next ten years.  In addition to Plaintiffs, two members of this group have been involuntarily terminated within the past three years and another is on work protected leave.

**ANSWER:** Defendant denies the allegations in Paragraph 36.

37.     On March 20, 2006, defendant, AIC, discharged plaintiff, Albertine Connell [sic], for the purpose of interfering with her attainment of "normal retirement pension" benefits, as described in the AIC Pension Plan Summary.  (Exhibit A, 7).

**ANSWER:** Defendant denies the allegations in Paragraph 37.

38.     Plaintiff, Albertine Connell [sic], was employed by AIC in excess of twenty years and maintained satisfactory or better performance records prior to her termination.

**ANSWER:** Defendant denies the allegations in Paragraph 38, except to admit that it employed Plaintiff Connell for over twenty years.

39.     Due to defendant [sic], AIC, terminating plaintiff's employment, Albertine Connell was forced to take early retirement and suffered a major deduction in her monthly pension benefits as plaintiff was not anticipating retiring until June 1, 2010, at the age of sixty-five (65).

**ANSWER:** Defendant denies the allegations in Paragraph 39, except to admit that participants in the AIC Pension Plan who meet certain criteria have an option to elect an early retirement pension and that upon such an election, an actuarial reduction in monthly benefits is made.

40.    Plaintiff, Albertine Connell [sic], avers that her involuntary termination allegedly "for cause" was pre-textual and intentionally designed to present her from exercising her rights to further benefits under the AIC Pension Plan.

**ANSWER:** Defendant denies the allegations in Paragraph 40.

41.    On or about June 1, 2006, Albertine Connell [sic] was granted her reduced "early retirement" pension benefit.

**ANSWER:** Defendant denies the allegations in Paragraph 41.

42.    As a direct and proximate result of defendant's violation of ERISA section 510, plaintiff has lost and will continue to lose income, including but not limited to, wages, salary increases, medical and dental insurance, pension benefits and other employment benefits. Plaintiff has also suffered disruption of her personal life and damage to her employment reputation.

**ANSWER:** Defendant denies the allegations in Paragraph 42.

**COUNT VIII**
**ALBERTINE CONNELL [sic]**
**VIOLATION OF ADEA**

1-42.   Plaintiff, Albertine Connell [sic], reaffirms and realleges the allegations contained in paragraphs 1 through 42 of Count VII as paragraphs 1 through 42 of Count VIII.

**ANSWER:** Defendant incorporates and restates its responses to the prior Paragraphs above as if fully set forth herein.

43.   On or about October 13, 2006, Plaintiff, Albertine Connell [sic], filed a charge of discrimination against Defendant, AIC, with the EEOC Charge No. 440-2007-00282 (Exhibit H).

**ANSWER:** Defendant admits the allegations in Paragraph 43.

44.   Plaintiff's charge of discrimination was timely filed within three hundred days of the alleged unlawful employment practice occurred; thus, Plaintiff has satisfied all administrative prerequisites.

**ANSWER:**   Defendant denies the allegations in Paragraph 44, except to admit that Plaintiff Connell filed a charged of discrimination within three hundred (300) days of her discharge.

45.   Plaintiff, Albertine Connell [sic], received the right to sue letter from the EEOC dated April 17, 2007.  Said right to sue letter is attached hereto as Exhibit I.  This case is filed within ninety days thereof.

**ANSWER:** Defendant admits the allegations in Paragraph 45.

46.    That on March 20, 2006, the defendant [sic] terminated the plaintiff's [sic] employment based on her age.

**ANSWER:** Defendant denies the allegations in Paragraph 46.


47.    Plaintiff, Albertine Connell [sic], was born on May 6, 1945, and at all relevant times, she was in excess of 40 years of age.

**ANSWER:** Defendant denies the allegations in Paragraph 47, except to admit that Plaintiff Connell's date of birth is May 6, 1945.


48.    Defendants' [sic] conduct in terminating plaintiff and replacing her with, upon information and belief, a less qualified, younger Securitas contractor who earned less wages and did not receive employee pension and welfare benefits, was discriminatory and in violation of plaintiff's rights under the Age in Discrimination in Employment Act.

**ANSWER:** Defendant denies the allegations in Paragraph 48.


49.    Upon information and belief, the unlawful discriminatory practices by Defendants, [sic] as set forth above, were intentional.

**ANSWER:** Defendant denies the allegations in Paragraph 49.


50.    Defendants, [sic] at all relevant times, acted with malice or reckless indifference to the federally protected rights of Plaintiff in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C.A. § 621.

**ANSWER:** Defendant denies the allegations in Paragraph 50.

51.    That the aforesaid acts by the Defendant have intentionally discriminated against Plaintiff.

**ANSWER:** Defendant denies the allegations in Paragraph 51.

52.    As a direct and proximate result of Defendants' violation of the ADEA, Plaintiff has lost and will continue to lose income, including but not limited to wages, raises, insurance and other employment benefits.  Plaintiff has also suffered severe emotional distress and humiliation about the ability to support himself, [sic] as well as disruption of his [sic] personal life and damage to her employment reputation.

**ANSWER:** Defendant denies the allegations in Paragraph 52.

## <u>DEFENDANT'S AFFIRMATIVE AND OTHER DEFENSES</u>

NOW COMES Defendant, The Art Institute of Chicago, by and through its counsel, MILLER, CANFIELD, PADDOCK and STONE, P.L.C., and, in further answer to Plaintiffs' Complaint, states that it will rely upon the following Affirmative and Other Defenses, if applicable, based on facts to be determined through appropriate discovery:

1.    All or some of the damages claimed by Plaintiff(s) are barred by their respective failures to make reasonable efforts to secure comparable employment or otherwise minimize the damages claimed.

2.    All or some of the relief requested by Plaintiffs is barred by the equitable doctrine of unclean hands.

3.    All or some of the relief requested by Plaintiffs is barred by the equitable doctrine of laches.

4.      All or some of the relief requested by Plaintiffs is beyond the scope of the relief allowed by the relevant statute.

5.      All or some of the relief requested by Plaintiffs is barred by their failure to exhaust or invoke their internal Plan or other administrative remedies.

6.      Plaintiffs lack standing to bring a claim under ERISA.

7.      All or some of the relief sought be Plaintiffs is barred by after acquired evidence or additional misconduct.

8.      Each of the Plaintiff's was terminated from employment for good, just and reasonable cause.

9.      Even assuming *arguendo* that an impermissible reason affected the decision to terminate one or more of the Plaintiffs, Defendant would have nonetheless terminated the Plaintiff in reliance solely on the legally permissible reasons for doing so.

**WHEREFORE**, Defendant, The Art Institute of Chicago respectfully requests that this Court enter an order granting judgment in its favor, dismissing the cause of action with prejudice and granting to Defendant its costs, attorneys' fees and such other an further relief as the Court deems just in the circumstances.

Dated:  August 25, 2008                    Respectfully submitted,

                                           The Art Institute of Chicago


                                           By:  /s/  Robert T. Zielinski
                                                One of its Attorneys

Robert T. Zielinski
Miller Canfield Paddock and Stone, P.L.C.
225 West Washington Street, Suite 2600
Chicago, Illinois  60606
Phone (312) 460-4216

Fax: (312) 460-4201
*Attorneys for Defendant*
www.zielinski@millercanfield.com

## <u>CERTIFICATE OF SERVICE</u>

I, Robert T. Zielinski, certify that on August 25, 2008, I served the attached **Defendant's Answer to Plaintiff's Complaint** by electronically filing it with the Clerk of the Court by using the CM/ECF System, which will send notification of such filing to the following parties:

John S. Bishof, Jr.
Jennifer Ann Clark
LAW OFFICE OF JOHN BISHOF, P.C.
**Attorneys for Plaintiffs**
77 West Washington St., Suite 1910
Chicago, IL 60602


s/ Robert T. Zielinski
One of the Attorneys for Defendants

CHLIB:16617.4\135443-00009